CITY OF OAK CREEK, Petitioner-Appellant,

v.

State of Wisconsin DEPARTMENT OF NATURAL
RESOURCES, State of Wisconsin Department of
Administration, and State of Wisconsin Division of
Hearings and Appeals, Marvin Gleason Contractors
and Elmer J. Sommers, Respondents,

v.

Wisconsin PUBLIC INTERVENOR, Respondent.

Court of Appeals

*No. 93–1122. Submitted on briefs December 15,
1993.—Decided May 10, 1994.*

(Also reported in 518 N.W.2d 276.)

429

430

431

For the petitioner-appellant the cause was submitted on the briefs of *Lawrence J. Haskin*, city attorney, of Oak Creek.

For the respondent State of Wisconsin Department of Natural Resources the cause was submitted on the briefs of *James E. Doyle*, attorney general, with *Lorraine C. Stoltzfus*, assistant attorney general.

For the respondent Wisconsin Public Intervenor the cause was submitted on the briefs of *Laura Sutherland*, assistant attorney general, special public intervenor.

Before Sullivan, Fine and Schudson, JJ.

SULLIVAN, J. The City of Oak Creek appeals from orders of the circuit court which affirmed a determination of the Division of Hearings and Appeals (DHA) of the Department of Administration for the State of Wisconsin.[1] The circuit court ordered the City of Oak Creek to remove a concrete channel from the west branch of Crawfish Creek and to submit to the

---

[1] The City's appeal is brought pursuant to § 227.58, STATS.

Department of Natural Resources (DNR) a plan for restoration of the creek. The circuit court upheld the DHA's finding that Crawfish Creek is a "navigable waterway," and therefore, is subject to the DNR's jurisdiction.[2] The circuit court also upheld the DHA's conclusion that the City of Oak Creek was in violation of certain DNR permit requirements under chapter 30 of the Wisconsin Statutes (Navigable Waters, Harbors and Navigation). Finally, the circuit court concluded that § 30.055, STATS., which exempted the City of Oak Creek from compliance with several permit requirements of chapter 30 for the Crawfish Creek concrete channel, was enacted in violation of WIS. CONST. art. IV, § 18.

On appeal to this court, the City of Oak Creek challenges the trial court's conclusion that § 30.055 was enacted in violation of the Wisconsin Constitution. The City also challenges the DHA's finding of navigability, the resulting applicability of chapter 30 permit requirements, and several findings that underlie the conclusion that the creek must be restored to its natural condition. Because we conclude that § 30.055, STATS., was enacted in violation of WIS. CONST. art. IV, § 18, and because the DHA's finding of navigability and need for restoration are supported by credible and sub-

---

[2] The Department of Natural Resources must prove navigability in order to establish its jurisdiction. *See Klingeisen v. DNR*, 163 Wis. 2d 921, 927, 472 N.W.2d 603, 605 (Ct. App. 1991). Section 30.10(2), STATS., provides:

> **Streams.** . . . [A]ll streams, sloughs, bayous and marsh outlets, which are navigable in fact for any purpose whatsoever, are declared navigable to the extent that no dam, bridge or other obstruction shall be made in or over the same without the permission of the state.

stantial evidence, *see* § 227.57(6), STATS., we affirm the orders of the circuit court.[3]

## BACKGROUND

The following facts are undisputed. Crawfish Creek runs through the City of Oak Creek. For many years the City had planned to relocate its course by creating a concrete channel upon its bed. In 1982, the DNR notified the City that Crawfish Creek was a navigable waterway, and as such, a permit from the DNR was required before the City could place any structure in or on the riverbed which might change the stream's course. In 1984, the DNR again notified the City of the permit requirement for changing a riverbed's course.

In 1985, despite the DNR's warning, the City changed the course of Crawfish Creek by placing a concrete channel, about one-fourth of a mile long, on the creek's west branch. Upon completion of the work, the City applied to the DNR for a permit. The DNR petitioned the Division of Hearings and Appeals for restoration of the creekbed. After a hearing, the DHA examiner determined that Crawfish Creek was navigable, and that the City had violated § 30.12, STATS.,[4] which requires the DNR's authorization and permit for structures and deposits in navigable waters, § 30.195,

---

[3] The trial court also concluded that § 30.055, STATS., was violative of the Equal Protection Clause, *see* WIS. CONST. art. I, § 1, and the Public Trust Doctrine, *see* WIS. CONST. art. IX, § 1. We decline to reach these issues because this appeal can be determined on the basis of Wis. Const. art. IV, § 18. *See Martinez v. DILHR,* 160 Wis. 2d 272, 275 n.1, 466 N.W.2d 189, 190 n.1 (Ct. App. 1991) (if we determine a statute to be unconstitutional for one reason we need not consider other reasons), *rev'd on other grounds,* 165 Wis. 2d 687, 478 N.W.2d 582 (1992).

[4] Section 30.12(1), STATS., provides, in part:

STATS.,[5] which prohibits the changing of the course of a navigable stream without a permit, and § 30.294, STATS.,[6] which declares every violation of chapter 30 to be a public nuisance. The DHA examiner ordered the City to remove the concrete and restore the riverbed.

The City secured review in circuit court. While the City's appeal was pending in the circuit court, the legislature enacted § 30.055, STATS., which provides:

> **Exemption from certain permit require-ments.** Notwithstanding ss. 30.12, 30.19, 30.195 and 30.294, the city of Oak Creek may not be required to remove any structure or concrete or other deposit that was placed in Crayfish Creek[7] in the city of Oak Creek before June 1, 1991, and may continue to maintain the structure, concrete or deposit without having a permit or other approval from the department.

[U]nless a permit has been granted by the department pursuant to statute or the legislature has otherwise authorized structures or deposits in navigable waters, it is unlawful:

 (a) To deposit any material or to place any structure upon the bed of any navigable water where no bulkhead line has been established; or

 (b) To deposit any material or to place any structure upon the bed of any navigable water beyond a lawfully established bulkhead line.

[5] Section 30.195(1), STATS., provides:

No person may change the course of or straighten a navigable stream without a permit issued under this section or without otherwise being expressly authorized by statute to do so.

[6] Section 30.294, STATS. , provides:

Every violation of this chapter is declared to be a public nuisance and may be prohibited by injunction and may be abated by legal action brought by any person.

[7] "Crayfish" Creek found in § 30.055, STATS., is the same as "Crawfish" Creek found in the appellate briefs and this opinion.

The trial court granted the motion of the Wisconsin Public Intervenor to intervene in the matter to challenge the constitutionality of § 30.055, STATS. The trial court subsequently determined that the manner in which § 30.055 was enacted was unconstitutional under WIS. CONST. art. IV, § 18. The trial court also sustained the DHA's conclusion that Crawfish Creek is navigable, and that the creekbed must be restored to it natural state. The City now appeals.

The City contends that § 30.055 was validly enacted as part of the budget bill and that the findings of the hearing examiner concerning navigability of Crawfish Creek are not supported by substantial evidence.

## CONSTITUTIONAL ISSUE

The Wisconsin Constitution provides: "No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." WIS. CONST. art. IV, § 18. The City concedes that § 30.055, STATS., was not contained in a single subject bill. The City argues, however, that § 30.055 is not a private or local law and, therefore, could be validly enacted as part of budget bill 1991 Wis. Act 39, § 966m.

Determination of § 30.055's constitutionality presents a question of law that we decide *de novo* without deference to the trial court or the administrative agency. *Sacred Heart School Bd. v. LIRC,* 157 Wis. 2d 638, 641, 460 N.W.2d 430, 431-32 (Ct. App. 1990). In *Davis v. Grover,* 166 Wis. 2d 501, 520, 480 N.W.2d 460, 466 (1992), the supreme court set forth the methodology for determining whether a bill or statute violates WIS. CONST. art. IV, § 18:

The determination of whether a bill violates Wis. Const. art. IV, § 18 involves a two-fold analysis. We must first address whether the process in which the bill was enacted deserves a presumption of constitutionality. Second, we must address whether the bill is private or local. If the bill is found to be private or local, then the requirements of art. IV, § 18 apply; namely, that the legislation must be a single subject bill and the title of the bill must clearly reflect the subject.

Thus, our first line of inquiry is whether the process by which § 30.055, STATS., was enacted deserves the presumption of constitutionality. Although a statute generally enjoys a strong presumption of constitutionality, an exception to the rule occurs when the behavior of the legislature allegedly violates a law mandating the form in which bills must be enacted. *City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 144 Wis. 2d 896, 913 n.5, 426 N.W.2d 591, 599 n.5 (1988). The Wisconsin Supreme Court has stated:

> In sec. 18 cases, because the legislature is alleged to have violated a law of constitutional stature which mandates the form in which bills must pass, the court will not indulge in a presumption of constitutionality, for to do so would make a mockery of the procedural constitutional requirement.

*Id.* Nonetheless, this court may indulge the presumption of constitutionality where it is evident that the legislature did adequately consider or discuss the legislation in question, even where such legislation was passed as part of a voluminous bill. *See Davis*, 166 Wis.

2d at 521-23, 480 N.W.2d at 466-67.[8] We, however, are not presented with such a case.

In the present case, the City asserts, without citation to the record or to authority, that § 30.055 was originated by the Joint Committee on Finance and that it was reviewed and modified by both the Assembly and the Senate. Because modifications were adopted during the bill's odyssey through the legislature, the City argues that the bill was adequately considered and debated. We disagree.

█

The Joint Finance Committee, without the sponsorship of any individual legislators, introduced the proposal which culminated in § 30.055, STATS. The bill had not been proposed or introduced into the legisla-

---

[8] In *Davis*, the Wisconsin Supreme Court reviewed a challenge to the Milwaukee Parental Choice Program (MPCP) under WIS. CONST. art. IV, § 18. With regard to the presumption of constitutionality, the court explained:

> The record in the present case is replete with evidence that the MPCP was introduced by a significant number of legislators and was debated extensively by the legislature and its various committees and agencies. The program was proposed in several consecutive years. The Assembly Committee on Urban Education held a public hearing on the proposed program. The program was passed as a separate, single subject bill by the assembly. Unfortunately, the senate included it as part of the multi-subject budget bill, thereby creating the problem we address here.

*Davis v. Grover*, 166 Wis. 2d 501, 521-22, 480 N.W.2d 460, 466 (1992). The court went on to note that there was no evidence that indicated the legislation had been "smuggled" through the legislature and noted that the senate had debated the budget bill and specifically amended the Milwaukee Parental Choice Program before enactment. *Id.* at 522-23, 480 N.W.2d 467. Under these circumstances, the court concluded that the presumption of constitutionality should be applied. *Id.*

ture previously. No public hearings were held on its content. It ultimately passed as part of the budget bill, 1991 Wis. Act 39, § 966m. The budget bill contained many hundreds of unrelated provisions covering in excess of 700 pages of session laws. The statute did not receive the required legislative consideration necessary to assure this court that the legislation was not "smuggled or logrolled through the legislature without the benefit of deliberate legislative consideration." *Davis*, 166 Wis. 2d at 522, 480 N.W.2d at 467. Thus, we conclude that the process by which § 30.055 was enacted is not entitled to a presumption of constitutionality.

Our next line of inquiry is whether § 30.055 is "private or local" legislation.[9] The supreme court has explained:

> A law is local if it applies to a particular locality to the exclusion of others . . . . "An act is 'general,' as contradistinguished from and inconsistent with 'local,' . . . only when its operation extends to the whole state, or perhaps to the whole of some class of localities therein . . . ."

---

[9] The Wisconsin Supreme Court has developed three criteria which we analyze to determine whether legislation is "private or local": (1) whether the legislation specific to particular people, places or things on its face; or (2) though not specific on its face, whether it involves prohibited classifications under WIS. CONST. art. IV, § 31; or (3) though not specific on its face, whether it creates a closed classification that is, in effect, "the same as legislation that is specific on its face to a certain locality." *Davis*, 166 Wis. 2d at 524-25, 480 N.W.2d at 467-68. We need not proceed further than the first criterion.

*Soo Line R.R. Co. v. DOT*, 101 Wis. 2d 64, 73-74, 303 N.W.2d 626, 631 (1981) (citation omitted). "[A] private law is generally viewed as one applying to or affecting a particular individual or entity." *Id.* at 75, 303 N.W.2d at 632. Legislation that is geographically specific or entity specific will not automatically be considered "private or local," however, where the general subject matter of the legislation relates to a state responsibility—that is, where " 'the state itself has an interest therein as proprietor, or as trustee, or in its governmental capacity, for the benefit or in the interest of the general public.' " *Milwaukee Brewers v. DHSS*, 130 Wis. 2d 79, 111, 387 N.W.2d 254, 268 (1986) (citations omitted). But geographically specific or entity specific legislation that relates to a statewide responsibility must, nonetheless, pass one additional test before the legislation will be considered a general law as opposed to a "private or local" law—the specific provision in question must have a "direct and immediate effect on a specific statewide concern or interest." *Id.* at 113, 387 N.W.2d at 269.

In *Soo Line*, the Wisconsin Supreme Court considered the legislation in question to be "private or local," despite the fact that it related to a matter of statewide responsibility. 101 Wis. 2d at 76-77, 303 N.W.2d at 632. The challenged legislation provided, in part:

> [T]he department of transportation is prohibited from constructing or participating in the construction of a separated grade overhead structure intersecting relocated state trunk highway 13 and the Soo Line Railroad tracks located west of the village of Prentice in Price County.

*Id.* at 69, 303 N.W.2d at 629. The court noted, "[i]t is difficult to conceive of a legislative enactment more

particularly addressed to a specific geographical location or a specific entity." *Id.* at 77, 303 N.W.2d at 632. The court recognized that the legislation related to a matter of statewide responsibility—the safety of railroad crossings within the state—but, nonetheless, considered the enactment to be "private or local." The court reasoned:

> Although many citizens of this state and other states may drive on the state trunk highway 13, or use the Soo Line, [the enactment in question] directly and immediately affects a particular entity, the Soo Line Railroad. The Soo Line Railroad is directly affected . . .; the other railroads are not. The law affects the expenses that the Soo Line Railroad may incur in the construction of the structure at this crossing . . . .

*Id.* at 76, 303 N.W.2d at 632.

Turning to the legislation at issue in this case, § 30.055, STATS., is as geographically specific and as entity specific on its face as was the legislation in *Soo Line*. It exempts specifically the City of Oak Creek from statutory requirements and limits its application to structures placed in Crawfish Creek before June 1, 1991.[10] Section 30.055 is, without a doubt, geographically specific and entity specific.

The next question we must answer is whether the subject matter of the legislation relates to a state responsibility. The City argues that § 30.055, STATS., affects state waterways, of which the state is a trustee. Hence, the City reasons, the legislation affects a mat-

___

[10] The Wisconsin Public Intervenor points out that, in reality, the statute's application is limited to a one-fourth mile portion of Crawfish Creek.

ter of statewide concern. It cannot be disputed that protecting the state's navigable waterways is a matter of statewide concern. *See Monka v. State Conservation Comm'n*, 202 Wis. 39, 41-42, 231 N.W. 273, 276 (1930). That statement of fact, however, does not end our inquiry; we must also determine whether the *enactment itself* has a direct and immediate effect on a specific statewide concern or interest. *See Brewers*, 130 Wis. 2d at 113, 387 N.W.2d at 269.

Although it cannot be disputed that legislation which seeks to protect and regulate the state's navigable waterways is of statewide concern, the same cannot be said of legislation that exempts one particular area, and specifically one particular project, from compliance with the statewide requirements. While the overall regulatory scheme of chapter 30 has statewide significance, and was enacted in the public's interest, we conclude that the exemption granted to the City of Oak Creek for the Crawfish Creek project was not enacted for the benefit of, or in the interest of, the general public. In sum, the legislation does not have a direct and immediate effect on a specific statewide concern or interest. Any direct and immediate effect that this legislation has is upon the expenses that may be incurred by the City of Oak Creek. The cost of removal of the structure in Crawfish Creek, which may put a dent in the City's treasury, is obviously unrelated to statewide responsibility or specific statewide interest.

Thus, we conclude that § 30.055, STATS., is a private or local law and, as such, is subject to the requirements of WIS. CONST. art. IV, § 18. That constitutional provision requires private or local laws to be passed only in single-subject bills. As stated previously, the City concedes that § 30.055 was not passed

in a single-subject bill. Therefore, we conclude that § 30.055 was enacted in violation of the requirements of art. IV, § 18, and is unconstitutional.

## NAVIGABILITY

To establish its jurisdiction, the DNR must establish that the waterway in question is "navigable." *See Klingeisen v. DNR*, 163 Wis. 2d 921, 927, 472 N.W.2d 603, 605 (Ct. App. 1991). The City argues that the DHA's finding of navigability in this case is not supported by credible evidence.

In *Muench v. Public Service Comm'n*, 261 Wis. 492, 53 N.W.2d 514 (1952), the Wisconsin Supreme Court explained the rule for determining navigability. The court stated that a stream is "navigable in fact" if it is "capable of floating any boat, skiff or canoe, of the shallowest draft used for recreational purposes." *Id.* at 506, 53 N.W.2d at 519. The supreme court expounded on the concept of "navigable in fact" in *DeGayner & Co. v. DNR*, 70 Wis. 2d 936, 946-47, 236 N.W.2d 217, 222 (1975):

> [T]he test is whether the stream has periods of navigable capacity which ordinarily recur from year to year, *e.g.*, spring freshets, or has continued navigable [sic] long enough to make it useful as a highway for recreation or commerce. The test is not whether the stream is navigable in a normal or natural condition, but whether it is in some sense permanently navigable, *i.e.*, regularly recurring or of a duration sufficient to make it conducive to recreational uses.

*See also Village of Menomonee Falls v. DNR*, 140 Wis. 2d 579, 587, 412 N.W.2d 505, 508 (Ct. App. 1987).

As an initial matter, the City argues that the DNR should have been required to make a threshold showing that the public actually used Crawfish Creek for recreational or commercial purposes. We reject that argument. Not one of the cases discussing navigability indicates that a finding of navigability requires a threshold showing of actual commercial or recreational use. We conclude that the test of navigability requires only that such use is *possible*.

The hearing examiner concluded that the creek was "navigable in fact." An administrative finding of navigability may be set aside only if unsupported by substantial evidence upon the entire record. *Menomonee Falls,* 140 Wis. 2d at 594, 412 N.W.2d at 511. This court may not pass upon the credibility of witnesses, weigh the evidence, or reverse an administrative decision if the record contains substantial evidence to sustain it. *Id.* Substantial evidence for purposes of administrative review is relevant evidence which a "reasonable mind might accept as adequate to support a conclusion." *Id.* at 594, 412 N.W.2d 512.

The City argues that the findings of the DHA are not supported by substantial evidence. The City acknowledges that the creek was in fact navigated by canoe on several occasions by DNR personnel. The City asserts, however, that the DNR investigation of Crawfish Creek, which the City sardonically refers to as a "drainage ditch," commenced about August 20, 1986, only after placement of the concrete and a substantial deepening and widening of the channel. The City notes that no tests were performed before the construction and deepening of the creek and that it was only in preparation for the hearing that the DNR "staged" the

444

tests, usually after substantial precipitation. These allegedly abnormal test conditions, the City argues, belie the examiner's findings that climactic conditions on test dates were normal, and, therefore, render the DNR's test results suspect. The City argues that hydraulic and aerial photographic analyses presented to the examiner are insufficient to support a finding of navigability for the creek. The City argues that, according to its witness, the creek was dry ninety percent of the time.

The examiner's finding of navigability is supported by evidence of DNR experts who actually navigated Crawfish Creek by canoe on August 26, 1986, and again on March 23 and 29, 1989. DNR personnel testified that photographs taken on March 5, 1987, and March 19, 1989, show that the creek was in fact navigable. Topographical maps and aerial photographs of the area before the concretization show the creek to be an intermittent stream. The fact that many tests were conducted under the "optimal conditions" of a spring thaw does not defeat a finding of navigability. The DNR, in fact, argues that such evidence supports its assertion that the creek was navigable on a recurring basis. We agree. The DNR presented evidence from which the examiner could find that the creek experienced periods of navigable capacity which ordinarily recur from year to year. The finding of navigability is supported by substantial evidence.

## RESTORATION OF CREEKBED

After concluding that the stream was navigable, and that the DNR had jurisdiction, the examiner turned to the issue of whether the creekbed should be restored. The examiner ultimately concluded that the

445

City must remove the concrete and restore the creekbed to its natural condition. The trial court determined that the DHA findings were supported by substantial evidence. On appeal, the City challenges many of the examiner's findings.

Section 227.57(6), STATS., provides that on review, the circuit court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact, nor may the trial court remand or set aside an agency action unless it first determines that the action depends on a finding that is not supported by substantial evidence. Our review of a circuit court order affirming an order of an agency is identical to that of the circuit court. *See West Bend Co. v. LIRC,* 149 Wis. 2d 110, 117, 438 N.W.2d 823, 826-27 (1989). We conclude that substantial evidence exists to support each finding. We will discuss each disputed finding, in turn, and summarize the evidence that supports each finding.

The examiner found that the "West Branch has significant fisheries value." That finding is supported by DNR field work and collections. In addition, a DNR fisheries biologist, who had conducted fisheries surveys of the west branch of Crawfish Creek, testified that this type of small stream contributes to the "massive downstream migrations" which would bring the young fish into the main river channel. In addition, an area resident, Thadeus P. Stachula,[11] testified that, for many years before the concrete structure was constructed, he had observed fish life in the stream and "lots of kids"

---

[11] Part of the north branch of the Creek ran through Stachula's property.

fishing for minnows and crayfish. The evidence is adequate to support the examiner's finding.

The examiner found that, "[t]he stream, if restored appropriately, would form a riparian corridor for the travel of numerous wildlife species found in the area, including many bird species, deer, raccoons, and frogs." This finding is supported by extensive testimony from a DNR plant and wildlife ecology expert. That expert explained that the concreted channelization has decreased the wildlife habitat and that removal of the concrete would reestablish and maintain the riparian vegetation which creates wildlife travel corridors. The evidence is supportive of the examiner's finding.

The City also challenges the examiner's finding that "[t]he stream, if restored appropriately, would contribute scenic beauty to the area . . . [and the current structures] are not aesthetically pleasing." This finding is supported by the testimony of a DNR employee. In support of her testimony, the DNR worker also provided the examiner with photographs of natural portions of the creek and the concreted portion. The evidence was adequate to support the finding.

Next, the City disputes the following finding: "[t]he silted area downstream of Nicholson Road and the rock chute north of the concrete formed fish migration barriers thus isolating the portion upstream of the concrete." The City argues that a DNR-approved barrier already existed before the rock chute was constructed. The DNR points out, however, that the City had applied for a permit for the initial barrier after it was constructed, and the DNR only granted a *temporary* permit for that structure. Under these cir-

447

cumstances, we conclude that the examiner's finding—that the silted area and the rock chute formed a migration barrier—was supported by substantial evidence.

The City challenges the examiner's finding that the concrete structure forms an "impermeable barrier" between the stream and the groundwater, and removes a "pool habitat" that had provided a "refuge for fish and invertebrates in dry conditions." This finding is supported by DNR evidence that, even in dry periods, non-concreted areas of the creek contained pools of water that provided important refuge for wildlife. DNR experts also observed, that although areas of the concrete were dry, groundwater seeped through expansion cracks in the structure. The experts observed the water seepage and concluded that water was actually flowing beneath the concrete layer, even during dry periods. The evidence supports the examiner's finding.

The examiner's finding that the "cumulative impacts of such concrete channelization . . . could destroy a sizable riverine system" is also supported by the evidence. On this point, the City objects generally to the consideration of "cumulative impacts." The importance of considering the "cumulative impacts" of relatively small projects was explained by the Wisconsin Supreme Court:

> A little fill here and there may seem to be nothing to become excited about. But one fill, though comparatively inconsequential, may lead to another, and another, and before long a great body of water may be eaten away until it may no longer exist.

448

*Hixon v. Public Serv. Comm'n*, 32 Wis. 2d 608, 631-32, 146 N.W.2d 577, 589 (1966). Here, the DNR presented testimony that Crawfish Creek contributes to an overall riverine system and provides a valuable link between the surface of the land and river system. The DNR also explained that concrete channelization has effects upon non-point source pollution in that it increases the velocity of waterflow and allows less attenuation of sediments and pollutants. The examiner's finding is supported by the evidence.

The City also challenges the findings that underlie the examiner's rejection of the City's proposed plan for restoration. That proposed plan would have left the concreted channel in place, but would have attempted to establish some type of restored habitat on top of the concrete. The City argues that the evidence does not support the finding that the "thin layer of sedimentation that would likely form on top of the concrete" would be subject to scouring and stripping by high flow velocities. We conclude that the evidence does support this finding. The hydraulic analysis conducted by a professional engineer, which relied on water flow calculations done by the U.S. Soil Conservation Service, indicates that soil, cobbles and vegetation placed on top of the concrete would likely be washed away in a flood event. The examiner accepted the engineer's testimony over the expert testimony presented by the City.

The City wages two final challenges to the examiner's conclusions. First, it argues that the examiner improperly concluded that "[i]n assessing the need for restoration, . . . it is appropriate to consider not only the present values of the stream as altered, but also the potential values, if restored to a more natural state." Second, the City argues that the examiner improperly

refused to consider the cost of removal of the concrete. We conclude that the examiner did not err.

It is relevant at this point to stress that the City did not apply for a permit from the DNR until the project in question was completed. If the City had applied for the permit first, the examiner's task would have been to balance the public's interests in the waterway against the benefits to be gained from the *proposed* project. *See Menomonee Falls*, 140 Wis. 2d at 589-90, 412 N.W.2d at 510. Ordinarily, the examiner's determinations would have been based upon observations of the waterway in its natural state, and the expected benefits and predicted condition of the waterway after the proposed alteration. By applying for the permit only after completion of the project, however, the balancing analysis has been turned on its head. The examiner was forced to observe the altered creek, and was required to *predict* the creek's value if it were returned to its natural, unaltered state. Keeping this analysis in mind, we turn to the City's specific objections to the examiner's conclusions.

The City objects to the examiner's choice of words—"the potential values, if restored to a more natural state." The City argues that the examiner was considering the value of the creek, not as it had existed in the past, but rather, as it could exist in the future in some new and improved condition. We do not read the examiner's findings so broadly. The examiner was merely trying to express the fact that, because the creek had already been altered, the analysis had to focus on the creek's *expected* value if returned to its unaltered state.

Finally, the City argues that "[c]ommon sense dictates that the benefits derived by removal of the concrete as it relates to the number of invertebrates or fish that would be saved, or to what extent water quality would be improved should have been weighed against the cost of taking out the concrete and its fiscal impact on the City of Oak Creek." On the contrary, this court concludes that common sense dictates the opposite—the cost of concrete removal should not have been an issue because the balancing analysis should properly have been applied *before* any concrete had been placed in the creek. To consider the cost of removal as an element of balancing equation in such an instance would be to reward the City for proceeding with the project without approval. The examiner did not err in refusing to consider evidence of the cost of concrete removal.

We conclude that each of the examiner's findings are supported by the evidence.

*By the Court.*—Orders affirmed.