SHORELINE PARK PRESERVATION, INC., and Ann E. Fleis-
chli, Petitioners-Appellants,

v.

WISCONSIN DEPARTMENT OF ADMINISTRATION, Defendant-
Respondent.

Court of Appeals

*No. 94–2512. Submitted on briefs June 13, 1995.—Decided
July 6, 1995.*

(Also reported in 537 N.W.2d 388.)

752

754

755

For the petitioners-appellants the cause was submitted on the briefs of *Ann E. Fleischli* and *Jack Longert* of Madison.

For the defendant-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, *Daniel S. Farwell,* assistant attorney general, and *Kathleen M. Ptacek,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.   Shoreline Park Preservation, Inc., and Ann E. Fleischli (hereafter Shoreline) appeal from an order dismissing their petition to review a decision of the Department of Administration. The department ruled that a proposal, authorized by the Wisconsin legislature, to construct a parking facility adjacent to a state office building in Madison and ancillary to a convention center being constructed on the Lake Monona shoreline complies with the Wisconsin Environmental

756

Policy Act, § 1.11, STATS., and applicable administrative rules.

Shoreline claims that: (1) the legislation authorizing the project is an unconstitutional "private bill"; (2) the department's decision should be nullified because of the "impermissible bias" of its hearing examiner; (3) the final environmental impact statement prepared by the department is inadequate for its failure to "present[ ] all feasible alternatives" to the project; and (4) the trial court improperly denied Shoreline's petition to supplement the record. We reject the arguments and affirm the order.

In 1990, the City of Madison began to study the possibility of constructing a convention center at a site known as Monona Terrace, using a design adapted from one developed by architect Frank Lloyd Wright many years earlier. After determining the center to be economically feasible and of benefit to Madison and Dane County, the city obtained the necessary authorizations from the Madison Common Council and sought commitments from the county and the state to assist in its funding.

In the 1991-92 biennial budget, the legislature approved the expenditure of funds to construct a parking ramp for the state office building at 1 West Wilson Street, adjacent to the Monona Terrace project. 1991 Wis. Act 269, § 9108(1). The legislature conditioned funding on the city's "irrevocably" providing "for the construction of the Frank Lloyd Wright Monona terrace project on or before December 31, 1994." 1991 Wis. Act 269, § 9108(4g).

The Wisconsin Environmental Policy Act (WEPA) requires state agencies to prepare environmental impact statements for all major state actions "significantly affecting the quality of the human

environment." Section 1.11(2)(c), STATS. The Department of Administration, in cooperation with the City of Madison, undertook to prepare the environmental impact statement (EIS) for the project.

It was a lengthy process. In September 1992, the department sent a preliminary list of potential environmental impacts, which had been identified by a "scoping" process,[1] to the secretaries of the state departments of transportation and natural resources and to the director of the State Historical Society of Wisconsin, and asked them to comment.

After meeting with representatives of these and other agencies and the City of Madison, the department retained a consulting firm, Woodward-Clyde Consultants, to prepare a draft EIS. A draft statement was issued October 13, 1992, for comment by the public and interested agencies. The following month Madison voters approved a referendum authorizing funding for the center, conditioned on a sound environmental basis for the project. In December, the department held a public hearing on the draft EIS to receive additional public comment on the draft and to allow for cross-examination of the Woodward-Clyde staff who had prepared the document.

The final EIS was completed in July 1993, and the department again solicited comment from the public and interested agencies on its contents and scheduled an additional public hearing.

---

[1] The administrative code describes "scoping" as a process of focusing on "significant issues" of a particular project in order to limit the scope of environmental impact statements. WIS. ADM. CODE § ADM 60.05(3)(a). According to the trial court, the process was used in this case to *broaden* the scope of the EIS by identifying all potential environmental impacts.

After reviewing the draft and final statements and comments, the department ruled that the final EIS complied with WEPA and relevant provisions of the administrative code. It concluded as follows:

> The final EIS identifies all *practicable* means to avoid or minimize the environmental harm that may be caused by the proposed action. The funding and other authorization for both City and Department participation in the proposed action is specific and limited to the Frank Lloyd Wright Monona Terrace Project. The impacts that are directly related to that unique design are identified in the final EIS and these impacts cannot be practicably avoided or minimized without compromising the integrity of the approved design.

(Emphasis in original.)

The department also found, among other things, that the project was not expected to result in measurable long-term adverse impacts on air or water quality or area fish and wildlife resources and that, while construction could result in short-term and "localized" adverse effects on Lake Monona water quality in the immediate area, "mitigation measures" outlined in the EIS would "avoid and/or minimize" any such impacts. The department also noted that "the Project is based upon a site- and design-specific" facility approved in a referendum and that the city was not considering other locations or designs for the project.

Shoreline sought a rehearing, claiming that the EIS was inadequate for failing to consider alternatives to the proposal and that the officer conducting the hearings on the draft and final statements was biased because he also served as the department's legal counsel. The department denied Shoreline's motion, concluding that there was no evidence of bias on the

part of the hearing officer and that no reasonable alternatives to approval or rejection of the project existed because the location, design and site for the project had been preselected by the city, the state legislature and the referendum vote of the people of Madison.

Shoreline petitioned the circuit court for review of the department's decision and, while the petition was pending, moved to present additional evidence to the department on various environmental and hydrogeologic matters and on the alleged bias of the hearing officer. The court denied the motion, concluding that: (1) Shoreline had presented no evidence that the hearing officer was biased; (2) Shoreline failed to put forth any reasons for not presenting the evidence to the department in the first place; and (3) to the extent the evidence involved matters arising after the hearings, it was more properly the subject of a supplemental EIS to be sought in proceedings independent of the action for judicial review of the original statement.

In August 1994 the court ruled on the remainder of Shoreline's arguments to overturn the department's decision. The court again rejected the charge of bias on the part of the hearing officer and concluded that, given the act of the legislature and the resolution passed by the common council, the department did not err in failing to consider alternative sites and designs for the Monona Terrace project.[2] The trial court entered an order dismissing Shoreline's petition and affirmed the

---

[2] As may be seen throughout this opinion, many of Shoreline's arguments transcend the state's proposal for a parking ramp and attack the city's decision to build the Monona Terrace convention center on environmental and other grounds. Despite Shoreline's forays into the wisdom and environmental soundness of the City of Madison's decision to build the center, we are concerned here only with the legislation authorizing state fund-

department's approval of the EIS. Other facts will be discussed below.

## I. *Standard of Review*

We begin by noting that we review the department's decision, not the circuit court's, *Hoell v. LIRC*, 186 Wis. 2d 603, 612, 522 N.W.2d 234, 238 (Ct. App. 1994), and the burden is on Shoreline to establish grounds to overturn that decision. *Wisconsin Cent. Ltd. v. Public Serv. Comm'n*, 170 Wis. 2d 558, 567, 490 N.W.2d 27, 31 (Ct. App. 1992).

An administrative agency's findings of fact will not be upset on review unless they are unsupported by substantial evidence in the record; we do not weigh the evidence independently or pass on the credibility of the witnesses. *Holtz & Krause, Inc. v. DNR*, 85 Wis. 2d 198, 204, 270 N.W.2d 409, 413 (1978). And this standard does not permit us to overturn an agency's finding even if it is against the great weight and clear preponderance of the evidence. *Id.* Finally, "[s]ubstantial evidence" is "that degree of evidence which would allow a reasonable mind to reach the same conclusion as the agency." *Carrion Corp. v. DOR*, 179 Wis. 2d 254, 264, 507 N.W.2d 356, 359 (Ct. App. 1993).

An agency's legal conclusions and its interpretation of statutes are subject to varying degrees of deference on appeal. If an agency's interpretation of the law or statute is long-standing or entails its expertise, experience or specialized knowledge—or the legal

---

ing of a parking ramp for the state office building adjacent to the center.

question is intertwined with factual determinations or with value or policy determinations—we will affirm its interpretation if it is reasonable, even if another conclusion would be equally reasonable. *Carrion Corp.*, 179 Wis. 2d at 264-65, 507 N.W.2d at 359. Where, however, the case is one of first impression for the agency and it lacks special experience or expertise in considering the question presented, its decision is not entitled to deference, and we consider it de novo. *Soo Line R.R. Co. v. Commissioner of Transp.*, 170 Wis. 2d 543, 549, 489 N.W.2d 672, 675 (Ct. App. 1992).

■

Applying these principles to the case at hand, we review de novo Shoreline's argument challenging the constitutionality of the legislation authorizing the parking project. *See State v. Corcoran*, 186 Wis. 2d 616, 628, 522 N.W.2d 226, 231 (Ct. App. 1994). The same is true with respect to its challenge of the impartiality of the hearing officer, which is, in essence, a due process claim.[3]

■

The trial court's denial of Shoreline's motion to supplement the record before the department under § 227.56(1), STATS., is a discretionary determination[4]

---

[3] A claim that a litigant was denied the right to an impartial decisionmaker before an administrative agency is one of fundamental fairness of the proceeding, i.e., a due process claim. *See Bracegirdle v. Department of Regulation and Licensing*, 159 Wis. 2d 402, 412, 464 N.W.2d 111, 114 (Ct. App. 1990). We agree with the department that such a claim raises issues of law—the application of a legal standard to a particular set of facts—which we review de novo. *Eastman v. City of Madison*, 117 Wis. 2d 106, 111-12, 342 N.W.2d 764, 767 (Ct. App. 1983).

[4] Section 227.56(1), STATS., provides that a court "may order" that additional evidence be taken before the agency, if

that we will sustain—even if we disagree with the result—if it appears that the department examined the relevant facts and arrived at a reasonable conclusion. *Burkes v. Hales*, 165 Wis. 2d 585, 590-91, 478 N.W.2d 37, 39 (Ct. App. 1991).

## II. *Constitutionality of the Authorizing Legislation*

Shoreline argues that the provision in the 1991-92 budget bill appropriating funds for the parking ramp should be declared null and void as a "private bill" in violation of article IV, section 18, of the Wisconsin Constitution, which provides that "[n]o private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." It is undisputed that the provision in question was not in a single-subject bill with a title identifying its nature or purpose.

The department counters by contending that Shoreline has waived the constitutional challenge by failing to raise it in the trial court. It is true, as the department points out, that we normally will not consider issues raised for the first time on appeal and, as we have said, "This is especially so for a claim that a statute is unconstitutional." *City of Mequon v. Hess*, 158 Wis. 2d 500, 506, 463 N.W.2d 687, 690 (Ct. App. 1990). Because the waiver rule is " 'one of judicial administration and policy, and not one of power,' " we retain the discretion to consider arguments raised for the first time on appeal. *Bauer v. Murphy*, 191 Wis. 2d 518, 527, 530 N.W.2d 1, 4 (Ct. App. 1995) (quoted source omitted). We elect to do so here; the parties have

need can be shown "to the satisfaction of the court." The decision is plainly addressed to the trial court's discretion.

763

adequately briefed the issue and we consider it to be in the interest of judicial economy to decide it here and now.

Article IV, section 18, has remained unchanged since the adoption of the constitution in 1848, and it exists "1) to encourage the legislature to devote its time to the state at large, its primary responsibility; 2) to avoid the specter of favoritism and discrimination, a potential which is inherent in laws of limited applicability; and 3) to alert the public through its elected representatives to the real nature and subject matter of legislation . . . ." *Milwaukee Brewers Baseball Club v. DHSS*, 130 Wis. 2d 79, 107-08, 387 N.W.2d 254, 266 (1986). Thus, a bill's relationship to a specific geographic locality or a specific entity will not render it a private or local bill in violation of the constitution "where the subject matter of the enactment is a responsibility of the state." *Id.* at 111, 387 N.W.2d at 268. Stated another way,

> a legislative provision which is specific to any person, place or thing is a private or local law within the meaning of art. IV, § 18, unless: 1) the general subject matter of the provision relates to a state responsibility of statewide dimension; and 2) its enactment will have direct and immediate effect on a specific statewide concern or interest.

*Id.* at 115, 387 N.W.2d at 269. The operation of a bill is said to extend to the whole state " 'when the subject thereof is such that the state itself has an interest therein as proprietor . . . or in its governmental capacity, for the benefit or in the interest of the general public.' " *Id.* at 111, 387 N.W.2d at 268 (quoted source omitted).

Relying principally on *City of Oak Creek v. DNR*, 185 Wis. 2d 424, 518 N.W.2d 276 (Ct. App. 1994), Shoreline argues that the bill violates article IV, section 18, because the parking project benefits only the citizens of Madison, not those of the state at large. We disagree.[5]

*City of Oak Creek* involved a dispute between the city and the Department of Natural Resources concerning the city's attempt to change the course of a navigable waterway by constructing a concrete channel on its bed. The project was in apparent violation of several provisions of ch. 30, STATS., which regulates structures and deposits on the beds of navigable waters and prohibits changing the course of a navigable stream without a permit. DNR ordered its removal. While the order was under review in circuit court, the legislature enacted a bill specifically providing that the City of Oak Creek could not be required to remove the channel and would be allowed to continue to maintain it without a DNR permit or approval. We held that the statute violated article IV, section 18, because it did not have any direct or immediate effect on a matter of

---

[5] In most cases that challenge the constitutionality of a state law, we employ a strong presumption that the law is constitutional. We do not always do so in cases under article IV, section 18, however, because such challenges necessarily involve a claim that the legislature has " 'violated a law of constitutional stature which mandates the form in which bills must pass . . . .' " *City of Oak Creek v. DNR*, 185 Wis. 2d 424, 437, 518 N.W.2d 276, 279-80 (Ct. App. 1994) (quoted source omitted). However, "[we] may indulge the presumption . . . where it is evident that the legislature . . . adequately consider[ed] or discuss[ed] the legislation . . . ." *Id.* at 437, 518 N.W.2d at 280.

Because the record contains nothing concerning the level of scrutiny the bill for the parking facility received, the law does not enjoy the presumption of constitutionality.

statewide concern but was aimed specifically and exclusively at saving money for the city. *City of Oak Creek,* 185 Wis. 2d at 442, 518 N.W.2d at 281-82.[6]

Our analysis of the bill in this case begins with its language. *Milwaukee Brewers,* 130 Wis. 2d at 117, 387 N.W.2d at 270. In brief and plain terms, it provides funds for a "[p]arking ramp at the state office building located at 1 West Wilson street in the city of Madison"—a facility for the use of state employees engaged in the conduct of state business. 1991 Wis. Act 269, § 9108(1). The state will be the proprietor of the facility, just as it is of office and parking structures and similar facilities throughout Madison and in several other locations around the state. Funding the construction of a parking ramp incident to a state office building—even though it may entail other uses after regular office hours[7]—is unquestionably a proper function of state government.

---

[6] We recognized in *City of Oak Creek* that legislation seeking to regulate and protect the state's navigable waters is a matter of statewide concern. *City of Oak Creek,* 185 Wis. 2d at 442, 518 N.W.2d at 281. We said, however, that "the same cannot be said of legislation that exempts one particular area, and specifically one particular project, from compliance with [those protections]," *id.*, and we noted that the only direct and immediate effect of the legislation was to allow the city to avoid "a dent in [its] treasury"—a matter we said was "obviously unrelated to a statewide responsibility or . . . interest." *Id.*, 518 N.W.2d at 281-82.

[7] We infer from the nature of Shoreline's challenge to the bill, and from the language in the bill tying the appropriation to the city's commitment to construct the Monona Terrace project, that the parking ramp may also be used at various times by visitors to the proposed convention center. This does not, in our opinion, affect the constitutional analysis under article IV, section 18.

We agree with the department that whether the parking ramp is being built in coordination with a controversial project such as the Monona Terrace convention center is irrelevant. The state has a proprietary interest in providing parking for employees working in its buildings, wherever they are located. The ramp is different in degree, perhaps, from the prison authorized for construction at a specific site in Milwaukee County in *Milwaukee Brewers*, 185 Wis. 2d at 88, 387 N.W.2d at 258, but it is equally a matter of state concern. As proprietor of the structure, the state will operate the ramp in its governmental capacity to accommodate people performing the state's everyday functions. We conclude that 1991 Wis. Act 269, § 9108(1), which appropriates state funds for construction of a parking ramp adjacent to the office building at 1 West Wilson Street, was not enacted through a private or local bill within the meaning of article IV, section 18, of the Wisconsin Constitution.

### III.   Bias of the Hearing Officer

Shoreline challenges the impartiality of Edward Main, the department's general counsel, in his role as hearing officer for the EIS proceedings. The claim is that because of Main's "active participation in the development of the [p]roject" prior to and during the hearings, he was, in effect, an "advocate for the project" and thus was not the "honest and impartial decisionmaker" to which Shoreline was entitled during the EIS hearing process. It is a challenge to the "fundamental fairness" of the proceedings based on the due process clauses of the state and federal constitutions; we reject it.

It is beyond dispute that a minimum requirement of due process is " 'a fair and impartial decisionmaker.' " *Racine Unified Sch. Dist. v. Service Employees Int'l Union*, 158 Wis. 2d 51, 60, 462 N.W.2d 214, 217 (Ct. App. 1990) (quoted source omitted). Due process may also be denied when the risk of bias in the proceeding is impermissibly high. *Guthrie v. WERC*, 111 Wis. 2d 447, 454, 331 N.W.2d 331, 335 (1983).

There is, however, a presumption of honesty and integrity on the part of those persons performing administrative adjudicatory functions that any challenger must overcome in order to prevail on a claim such as this. *Guthrie*, 111 Wis. 2d at 455, 331 N.W.2d at 335. Shoreline attempts to do so here by asserting that Main had served as "counsel" for one for the parties to this proceeding—a fact which, if true, would disqualify him as an impartial decisionmaker. *Id.* at 461, 331 N.W.2d at 338 (where administrative decisionmaker has served as counsel representing a party in the proceedings, he or she is disqualified and the decision must be vacated).

Shoreline bases that assertion on two "facts": an undescribed conversation between Main and the EIS consultant, Woodward-Clyde Consultants, prior to the hearings; and Main's receipt of a memorandum from the consultant "regarding the need for DNR approval for the project" in the hiatus between the hearings on the preliminary and the final impact statements. These "facts," however, are not found in the record of the proceedings before the department, and we do not

consider them.[8] Indeed, the circuit court noted that the facts of record "at the most, demonstrate only that Mr. Main served as general legal counsel to the Department of Administration," and that Shoreline had failed to establish "that [he] had any prior involvement in this specific matter in [that] capacity." Shoreline has not overcome the presumption of regularity attaching to Main's actions as the presiding officer at the EIS hearings.

Shoreline's reliance on *Guthrie* in support of its position is equally unavailing. *Guthrie* involved a contested case hearing before the employment relations commission in which one of the commissioners had previously represented one or more of the parties in the case. Not only had he previously represented the commission but he filed a brief on behalf of the commission, the complainant and his union when the case came to circuit court. *Id.* at 449, 460, 331 N.W.2d at 332, 338. The supreme court held that the commissioner's prior participation in the case was sufficient to disqualify him as a decisionmaker and vacated the commission's decision. *Id.* at 461, 331 N.W.2d at 338. As the trial

---

[8] As a source of its factual assertions, Shoreline cites only to documents attached to its petition for rehearing before the department and to its petition for review in circuit court. It does not refer us to any place in the record of the EIS proceedings where the asserted "facts" appear. It is fundamental, of course, that our review is limited to the record, *In re Ryde*, 76 Wis. 2d 558, 563, 251 N.W.2d 791, 793 (1977), and that it is up to the appellants to ensure that the record contains facts supporting their arguments for reversal. *State v. Smith*, 55 Wis. 2d 451, 459, 198 N.W.2d 588, 593 (1972).

court found, the facts of record afford no basis for application of *Guthrie* in this case.[9]

Assuming that Main's role was to advise the department on what process was required in the EIS proceedings and to oversee that process throughout the hearings, it remains true that the existence of impermissible bias, if any, must be ascertained by reference to words spoken or actions undertaken in those proceedings as reflected in the record. The trial court determined, and we agree, that Shoreline has failed to demonstrate the existence of any record of such bias in these proceedings.

## IV. Failure to Consider "All Feasible Alternatives"

Shoreline complains that the EIS was inadequate and urges us to reverse the department's approval because the statement does not "explain" whether any feasible alternatives for the Monona Terrace project exist—such as "other sites and other designs to meet

---

[9] We also agree with the trial court that the nature of an EIS proceeding is not the type of "adversarial" hearing under review in *Guthrie*. While the procedure employed in EIS hearings is that of a "contested case proceeding," *see* WIS. ADM. CODE § ADM 60.08(1), and opposing views are often discussed at the hearings, it is not an "adversary" proceeding as that term is universally considered. The purpose of the hearing is to obtain comment from interested parties, and the supreme court has recognized that "WEPA does not require an evidentiary hearing regarding the threshold EIS decision. . . . [T]he manner of the proceedings is left to the sound discretion of the agency involved, as long as there is an opportunity for public participation and there is a reviewable record assembled." *Larsen v. Munz Corp.*, 167 Wis. 2d 583, 605, 482 N.W.2d 332, 342 (1992).

the same ends of a convention site in downtown Madison."

**[16]**

First, as we have noted, the project under review by the department was not the Monona Terrace convention center but the state-office parking facility for which funds were appropriated by the legislature. Second, while WEPA requires state agencies to "[s]tudy, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources," § 1.11(2)(e), STATS., the mandate is subject to a "rule of reason."

> While the agency's consideration of alternatives is to be thorough, it need not be absolutely exhaustive, considering every conceivable alternative. The requirement of sec. 1.11(2)(e) is subject to a rule of reason. . . . The range of alternatives that must be considered need not include those whose effect cannot be reasonably ascertained, whose implementation is deemed remote or speculative, or which are not reasonably related to the purposes of the proposed agency action.

*Wisconsin's Envtl. Decade, Inc. v. Public Serv. Comm'n,* 79 Wis. 2d 161, 175, 255 N.W.2d 917, 925 (1977) (citations omitted).

The legislation Shoreline challenges in this case is site-specific. It specifies a street address. A map included in the EIS confirms that the proposed parking ramp is in fact adjacent to the state office building as directed in the statute. In *Milwaukee Brewers Baseball Club v. DHSS,* 130 Wis. 2d 56, 74-75, 387 N.W.2d 245, 252 (1986), the supreme court held that where the legislature had selected a specific site for a prison in

771

Milwaukee County, the department "need not consider alternative sites" in preparing an EIS.[10]

We agree with the trial court that, given the specificity of the legislation, the "rule of reason" compelled the department *not* to engage in the fruitless consideration of other sites. "It would be unreasonable," said the court, "to expect the [department] and its consultant to expend considerable time, money and effort in exploring alternatives to a decision that has been predetermined by the legislature, the Madison City Council and the Madison electorate." We conclude that the site-specific language of the legislation authorizing the funding for the parking ramp rendered consideration or implementation of any alternative to the 1 West Wilson site remote and speculative and not at all reasonably related to the purposes of the environmental review of the project under § 1.11(2)(e), STATS. *See Wisconsin's Envtl. Decade, Inc.*, 79 Wis. 2d at 175, 255 N.W.2d at 925.

## V. *Motion to Present Additional Evidence*

Section 227.56(1), STATS., provides that the court "may" permit a party to present additional evidence before the agency if it is "shown to the satisfaction of the court that the additional evidence is material and

---

[10] The court grounded its conclusion on the fact that the legislation plainly indicated an intent that the department's environmental review be conducted "on the specified site to determine whether the construction of a prison there would have a detrimental effect on the environment." *Milwaukee Brewers Baseball Club v. DHSS*, 130 Wis. 2d 56, 74, 387 N.W.2d 245, 252 (1986). As indicated, the legislation in this case is similarly site specific.

that there were good reasons for failure to present it in the proceedings before the agency . . . ." As we recognized above, it is a discretionary determination by the trial court, which we review under well-known standards:

> A court exercises discretion when it considers the facts of record and reasons its way to a rational, legally sound conclusion. . . . And where the record shows that the court looked to and considered the facts of the case and reasoned its way to a conclusion that is (a) one a reasonable judge could reach and (b) consistent with applicable law, we will affirm the decision even if it is not one with which we ourselves would agree.

*Burkes v. Hales*, 165 Wis. 2d 585, 590, 478 N.W.2d 37, 39 (Ct. App. 1991) (citations and footnotes omitted). Because the exercise of discretion is so essential to the trial court's functioning, we generally look for reasons to sustain discretionary decisions. *Id.* at 591, 478 N.W.2d at 39.

Shoreline asked the court to remand to the department for renewed proceedings to consider several items of "new evidence"—some involving matters arising while the hearings were underway and some arising thereafter.[11] As to the former, the trial court concluded

[11] In its brief to this court, Shoreline sets forth six items of "new evidence" it claims the court should have ordered to be considered in reopened proceedings before the agency. Comparing Shoreline's brief to the trial court's decision, it is difficult to ascertain whether all six of these items were referred to in its request to the trial court. To the extent they were not, we do not consider them. As we have said above, whether to allow additional evidence under § 227.56(1), STATS., is discretionary with the court, and it is fundamental that a court does not errone-

that Shoreline had not put forth satisfactory reasons why the material had not been presented during the hearings as required by § 227.56(1), STATS.[12] As to the latter, the court ruled that these items were more properly the subject of a supplemental EIS, which, under WEPA and applicable provisions of the administrative code, is a matter independent of the judicial review proceedings on the original EIS.[13]

The court's memorandum decision establishes that, in denying Shoreline's "new-evidence" motion, it exercised its discretion under the rules just stated; and because, in doing so, it reasoned its way to a decision that has a rational basis and is consistent with applicable law, we may not overturn it.

*By the Court.*—Order affirmed.

---

ously exercise its discretion *if it is not asked to exercise* discretion in the first place. *State v. Gollon,* 115 Wis. 2d 592, 604, 340 N.W.2d 912, 918 (Ct. App. 1983).

[12] The court stated, for example, that the evidence Shoreline sought to add to the record was either speculative or insufficiently grounded in the record or in Shoreline's submissions to the court in support of its request.

[13] WISCONSIN ADM. CODE § ADM 60.06(1)(i) provides that the department shall prepare a supplemental EIS if either "significant new . . . environmental concerns" or "substantial changes . . . relevant to environmental concerns" have arisen after completion of the original EIS. The trial court reasoned that because preparation of a supplemental EIS is a department function to be undertaken only if the predicates stated in the rule are determined to exist—"significant . . . environmental concerns" or "substantial" design changes affecting the environment—the department, not the court, was the proper forum to seek such relief.