Dennis J. FLYNN, individually and on behalf of other citizen users of the Wisconsin Court System, Plaintiff-Respondent,

v.

DEPARTMENT OF ADMINISTRATION, Mark D. Bugher, the Secretary of Administration, and Jack C. Voight, the Wisconsin State Treasurer, Defendants-Appellants.

Supreme Court

*No. 96–3266. Oral Argument September 4, 1997.—Decided March 13, 1998.*

(Also reported in 576 N.W.2d 245.)

525

For the defendants-appellants the cause was argued by *Peter C. Anderson*, assistant attorney general, with whom on the brief (in the Court of Appeals) was *James E. Doyle,* assistant attorney general.

For the plaintiff-respondent there were briefs (in the Court of Appeals) by *J. Ric Gass, John F. Hovel, Joseph S. Goode* and *Kravit, Gass & Weber, S.C.*, and of counsel *Eugene O. Duffy* and *O'Neil, Cannon & Hollman, S.C.*, all of Milwaukee, and oral argument by *J. Ric Gass*.

Amicus curiae brief was filed (in the Court of Appeals) by *Christine Stoneman,* and *John F. Ebbot*, Milwaukee for Legal Action of Wisconsin.

Amicus curiae brief was filed (in the Court of Appeals) by *Ward I. Richter* and *Bell, Metzner, Gierhart & Moore, S.C.*, Madison for the Wisconsin Chapter, American Board of Trial Advocates.

Amicus curiae brief was filed (in the Court of Appeals) by *Daniel W. Hildebrand* and *DeWitt, Ross & Stevens, S.C.*, Madison for the State Bar Assocation.

Amicus curiae brief was filed (in the Court of Appeals) by *Stephen W. Hayes, William A. Jennaro* and *Milwaukee Bar Assocation* and of counsel *R. Timothy Muth, Colleen D. Ball* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.; Michael J. Morse* and *von Briesen, Purtell & Roper, S.C.; William J. Mulligan* and *Davis & Kuelthau, S.C.*, all of Milwaukee for the Milwaukee Bar Association.

¶ 1. WILLIAM A. BABLITCH, J. The power of this court to declare invalid duly enacted legislation is an awesome one. It is a power that is largely unchecked, most always final. If we are to maintain the public's confidence in the integrity and independence of the judiciary, we must exercise that power with great restraint, always resting on constitutional principles, not judicial will. We may differ with the legislature's choices, as we did and do here, but must never rest our

decision on that basis lest we become no more than a super-legislature. Our form of government provides for one legislature, not two. It is for the legislature to make policy choices, ours to judge them based not on our preference but on legal principles and constitutional authority. The question is not what policy we prefer, but whether the legislature's choice is consistent with constitutional restraints. We find that it is in this case.

¶ 2. The issue is the validity of the Wisconsin Legislature's enactment of 1993 Wis. Act 16, § 9253, causing the lapse of $2,898,000 to the general revenue fund of unexpended program revenues designed for court automation. Dennis J. Flynn argues on behalf of himself and other citizen users of the Wisconsin court system that this statute is invalid because it violates fundamental public policy grounded in the constitution, and the separation of powers doctrine. We disagree with Flynn's arguments. Accordingly, we reverse.

¶ 3. In 1989, in response to a request by the judicial branch, the legislature created an appropriation for court automated information systems, later codified as Wis. Stat. § 20.680(2)(j) (1989–90) (reprinted in full below).[1] "Automated information systems" for the judiciary includes electronic filing of documents, document imaging, computerized file tracking, judicial access to computerized research tools, Internet access to the Wisconsin court system, computerized court rooms, and integrating the computer information systems of

---

[1] There is appropriated to the supreme court for the following programs: . . .(j) *Automated information systems.* All moneys received under ss. 814.61, 814.62 and 814.63 that are required to be credited to this appropriation under those sections, and 66.7% of the moneys received under s. 814.635, for the establishment of a court automated information system. Wis. Stat. 20.680(2)(j).

all the circuit courts in the state through a circuit court automation program (CCAP).

¶ 4. Court automation is funded through program revenue (defined below).[2] Several sections of Wis. Stat. ch. 814 provide that the clerks of court for each county in Wisconsin shall collect filing fees and remit them to the county treasurer. *See* Wis. Stat. §§ 814.61, 814.62, 814.63 (1993–94).[3] In addition to filing fees, court users pay a $3 court automation fee. *See* Wis. Stat. § 814.635. The county treasurer then submits a statutorily determined portion of the fees to the state treasurer. The state treasurer deposits the funds in the general revenue fund. Although the funds are held in the general revenue fund as program revenue, a certain portion, designated by statute, is credited to the court automation program. *See* Wis. Stat. §§ 20.680(2)(j), 814.61, 814.62 and 814.63.

¶ 5. Until the 1995–1997 biennium budget when court automation became an annual appropriation (defined below),[4] the court automation program revenue was classified as a continuing appropriation (defined below).[5] Expenditures made under a continu-

---

[2] *Program revenues*: revenues which are paid into the general fund and are credited by law to an appropriation to finance a specified program or state agency. Wis. Stat. 20.001(2)(b) (1993-94).

[3] All future references to Wis. Stats. will be to the 1993-94 version of the statutes unless otherwise noted.

[4] *Annual appropriations*. "[A]ppropriations which are expendable only up to the amount shown in the schedule and only for the fiscal year for which made." Wis. Stat. 20.001(3)(a) (1993-94).

[5] *Continuing appropriations*. . . . appropriations which are expendable until fully depleted or repealed by subsequent action of the legislature. . . . The amount of a continuing appropriation from program revenues . . . consists of the balance in the appro-

ing appropriation from program revenues "are limited only by the available revenues from which the appropriation is made." Wis. Stat. § 20.001(3)(c).

¶ 6. At the time of the governor's 1993–95 budget proposal, the Department of Administration (the Department) projected that the court automation appropriation would have a positive balance of over $4 million at the end of fiscal year 1993. The court automation fees were also scheduled to sunset on December 31, 1993. *See* Wis. Stat. §§ 814.61(1)(a)2., (3)(b), (8)(am), 814.62(1)(b), (3)(a)2., (3)(d)2., (3)(d)3., 814.63(1)(b) (1991–1992).

¶ 7. The Legislative Fiscal Bureau offered four alternatives for the court automation program with respect to the anticipated $4 million balance for consideration by the Joint Finance Committee. The first alternative was the governor's proposal to extend the sunset of the court automation fees by two years, authorize approximately $3.24 million in addition to the base funding level, and lapse $3.5 million from the court automation program revenue continuing appropriation to the general fund. The second alternative suggested modifying the governor's recommendation by deleting the $3.5 million lapse. The third alternative would have deleted the $3.5 million lapse while authorizing additional expenditures of $2,372,900 to enhance the CCAP program. The fourth alternative suggested

priation account at the end of the previous fiscal year, if any, together with any revenues received during the fiscal year that are directed by law to be credited to the appropriation account. Dollar amounts shown . . . for a continuing appropriation from program revenues . . . represent the most reliable estimates of the amounts which will be expended during any fiscal year. . . . [E]xpenditures made . . . under a continuing appropriation from program revenues . . . are limited only by the available revenues from which the appropriation is made. Wis. Stat. 20.001(3)(c).

modifying the governor's proposal by reducing the lapse by $602,000 and authorizing additional expenditures of $301,000 in each year of the biennium for public access terminals.

¶ 8. The Joint Finance Committee reported out the fourth alternative, which was adopted by the full legislature. As a result, the legislature increased the appropriations for the court automation program authorized under Wis. Stat. § 20.680(2)(j) by nearly $1 million from the previous biennium, extended the CCAP fee sunset another two years, and lapsed $2,898,000 million from the court automation program revenue appropriation to the general fund. *See* 1993 Wis. Act 16, §§ 153, 3761, 3763, 3766, 3768–3772, 9253. Specifically, 1993 Wis. Act 16, § 9253 provided:

> Notwithstanding section 20.001(3)(c) of the statutes, on the effective date of this subsection, there shall lapse to the general fund $2,898,000 from the appropriation to the supreme court under section 20.680(2)(j) of the statutes.

¶ 9. In March, 1995, Flynn, individually and on behalf of other citizen users of the Wisconsin court system, filed this action against the Department, requesting a declaratory judgment, under Wis. Stat. § 806.04, that 1993 Wis. Act 16, § 9253 is unconstitutional. Flynn challenges executive and legislative actions in enacting 1993 Wis. Act 16, § 9253 as violating public policy grounded in the constitution, statutes, common law and public expectations. He further challenges § 9253 as a violation of the separation of powers doctrine. The parties filed cross motions for summary judgment.

¶ 10. The circuit court granted Flynn's motion for summary judgment and declared 1993 Wis. Act 16,

§ 9253 invalid as a violation of fundamental public policy grounded in the Wisconsin constitution. The circuit court, however, denied Flynn's claim that the statute was invalid because it violated Wis. Stat. § 20.001(3)(c), and the court did not address Flynn's argument that the statute violated the separation of powers doctrine. After hearing arguments pursuant to the court's Order to Show Cause, the circuit court ordered that the funds lapsed to the general revenue fund be returned to the court automation program which, at the time, was funded through an annual appropriation rather than a continuing appropriation. The circuit court granted Flynn's motion for attorneys fees awarded out of the common fund. The circuit court also ordered a brief interim stay, pending determination by the court of appeals of the Department's motion to stay execution of the judgment pending appeal. The defendants then filed their notice of appeal. This court granted Flynn's petition to bypass the court of appeals according to Wis. Stat. § 809.60.

¶ 11. The parties agree, and correctly so, that this court's review of the circuit court's grant of summary judgment is *de novo*, applying the same summary judgment methodology of Wis. Stat. § 802.08. *See Millers Nat. Ins. Co. v. Milwaukee*, 184 Wis. 2d 155, 164, 516 N.W.2d 376 (1994). Additionally, both parties moved for summary judgment which is equivalent to a stipulation of facts, thus permitting the circuit court to decide the case only on legal issues. *See Friendship Village Milwaukee v. Milwaukee*, 181 Wis. 2d 207, 219, 511 N.W.2d 345 (Ct. App. 1993).

## I.

¶ 12. In part I. of his brief, Flynn argues that 1993 Wis. Act 16, § 9253 is not entitled to a presumption of constitutionality. It is unclear from his brief and from oral argument what the basis is for his assertion. We discern two possible alternative grounds for Flynn's assertion. One possibility is that § 9253 is a private or local bill; thus, the process by which it was enacted into law is not deserving of the presumption of constitutionality. Alternatively, Flynn could be arguing that although § 9253 is not a private or local bill, the reasoning employed in cases analyzing Wis. Const. art. IV, § 18 (reprinted below),[6] specifically with respect to the process by which the private or local bill was enacted, is equally applicable here because, Flynn asserts, § 9253 was smuggled through the legislature as part of a multi-subject budget bill. Regardless of the basis, we find no merit in either.

██

¶ 13. 1993 Wisconsin Act 16, § 9253 is obviously not a private or local bill enacted in violation of Wis. Const. art. IV, § 18. The statute is specific on its face as to a particular thing. It lapsed a specific amount of money ($2,898,000) from a specific program revenue fund (court automation) to a specific fund (general revenue fund).

> [A] legislative provision which is specific to any person, place or thing is a private or local law within the meaning of art. IV, sec. 18, unless: 1) the general subject matter of the provision relates to a state

---

[6] **"Title of private bills.** No private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." Wis. Const. art. IV, 18.

> responsibility of statewide dimension; and 2) its
> enactment will have direct and immediate effect on
> a specific statewide concern or interest.

*Milwaukee Brewers v. DNR*, 130 Wis. 2d 79, 115, 387 N.W.2d 254 (1986). If both parts of this two-part analysis are met, the statute survives Wis. Const. art. IV, § 18 scrutiny and need not be introduced and enacted as a separate bill. *See id.*

¶ 14. In this case, the statute meets both parts of the *Brewers* analysis and therefore is not a private or local law within the meaning of Wis. Const. art. IV, § 18. First, the general subject matter, court automation funding, relates to a state responsibility of statewide importance. The program itself is meant to connect the computer systems in courts across the state. Additionally, lapsing the funds to offset other court-related expenditures affects the entire state court system. Second, the statute went into effect when the budget went into effect. The funds were immediately lapsed. Therefore, this legislation had a direct and immediate effect on court automation funding, a specific statewide concern.

¶ 15. We next turn to Flynn's possible alternative argument that 1993 Wis. Act 16, § 9253 is not deserving of a presumption of constitutionality because it was smuggled through the legislature, reasoning by analogy to Wis. Const. art. IV, § 18 case law.

¶ 16. We do not decide in this case whether to extend Wis. Const. art. IV, § 18 analysis to multi-subject bills. However, even were we to extend article IV, § 18 analysis with respect to the process by which legislation is enacted to parts of a budget bill which are not private or local we conclude that 1993 Wis. Act 16, § 9253 was not smuggled through the legislative process.

¶ 17. One of the underlying purposes of Wis. Const. art. IV, § 18, which Flynn seems to use by analogy, is to alert the public, through its representatives, of the real nature of a proposal. *See Davis v. Grover*, 166 Wis. 2d 501, 519, 480 N.W.2d 460 (1992) (citing *Brewers*, 130 Wis. 2d at 107–108). This constitutional provision, article IV, § 18, ensures the legislature's accountability to the public by preventing legislation from being smuggled or logrolled through the legislature. *See Davis*, 166 Wis. 2d at 519. In *Davis*, the legislature had previously introduced a single subject bill authorizing the Milwaukee Parental Choice Program (MPCP) and the Senate debated and specifically amended it. *See id.* at 523. Because the legislature had intelligently participated in considering MPCP, "it is proper for [the court] to apply a presumption of constitutionality to the process in which the MPCP was enacted into law." *Id.* (footnote omitted).

¶ 18. In sharp contrast, the court of appeals in *City of Oak Creek v. DNR*, 185 Wis. 2d 424, 518 N.W.2d 276 (Ct. App. 1994) did not afford the presumption of constitutionality to the process by which the legislature included permit exemptions for the City of Oak Creek in the 1991 Budget Bill. *See* 185 Wis. 2d at 439. In that case, the Joint Finance Committee introduced the proposal without any individual sponsorship, no one had previously introduced the legislation and there were no public hearings on the issue. *See id.* at 438–439. "The statute did not receive the required legislative consideration necessary to assure this court that the legislation was not 'smuggled or logrolled through the legislature without the benefit of deliberate legislative consideration.' " *Id.* at 439 (citing *Davis*, 166 Wis. 2d at 522). Therefore, the process by which the

statute was enacted was not afforded the presumption of constitutionality.

¶ 19. In the case now before this court, the process by which the legislature enacted 1993 Wis. Act 16, § 9253 falls somewhere between the process used in *Davis* and in *City of Oak Creek*. Although § 9253 was one of thousands of sections in the budget bill, "this court may indulge the presumption of constitutionality where it is evident that the legislature did adequately consider or discuss the legislation in question, even where such legislation was passed as part of a voluminous bill." *City of Oak Creek*, 185 Wis. 2d at 437.

¶ 20. The legislature did adequately consider 1993 Wisconsin Act 16, § 9253 and it was not smuggled through the legislature. Although the statute was never introduced as single subject legislation, it was given considerable attention by the Joint Finance Committee. The Legislative Fiscal Bureau offered four alternatives to the Joint Finance Committee for court automation funding. The Committee considered these four alternatives to decide how to address the unexpended funds in the court automation program revenue fund and the simultaneous increase in other court-related expenditures. Unlike the statutes in both *Davis* and *City of Oak Creek*, § 9253 pertained to a budgetary matter and therefore, was logically included in a budget bill. The statutes challenged in both *Davis* and *City of Oak Creek* did not involve the state's budget. Because there is evidence that the legislature "intelligently participated" in considering § 9253, the provision was not "smuggled" or "logrolled" through the legislature.

¶ 21. Accordingly, we reject Flynn's argument that 1993 Wis. Act 16, § 9253 should not be afforded the

presumption of constitutionality. It is not a private or local bill; it was not "smuggled" through the legislature. Therefore, Flynn carries the burden to prove this statute unconstitutional beyond a reasonable doubt.

## II.

¶ 22. We now turn to the substantive issues which Flynn raises to challenge the validity of 1993 Wis. Act 16, § 9253. He first argues that public policy grounded in the constitution, statutes, common law and public expectations prohibits the lapse of funds. Second, he argues that the statute is a violation of the separation of powers doctrine. We disagree with both arguments. Accordingly, we reverse. We will address each issue in turn.

¶ 23. Flynn first claims that 1993 Wis. Act 16, § 9253 violates public policy grounded in the Wisconsin Constitution, statutes (specifically Wisconsin's budget rules), common law and public expectations. He asserts that public policy, grounded in Wis. Const. Art. VIII, §§ 2 and 5, prohibits the Department from proposing and the legislature from enacting a statute to reallocate already appropriated funds. He also argues that public policy flows from many sources, not just from the legislature. Because public policy embodies common sense and common conscience, courts may independently glean public policy from the constitution. Flynn contends that § 9253 also violated the long-standing definition of appropriations first articulated in *State ex rel. Finnegan v. Dammann*, 220 Wis. 143, 148, 264 N.W.2d 622 (1936). " 'An appropriation is the setting aside from the public revenue of a certain sum of money for a specified object, in such manner that the executive officers of the government are authorized to use that money, and no more, for that object, and no other.' "

*Finnegan*, 220 Wis. at 148 (quoting *Hunt v. Callaghan*, 257 Pac. 648, 649 (1927)). Once funds are appropriated, they can not later be taken away. Finally, he asserts that this statute violates public expectations–expectations that these fees would be used for court automation. We disagree with Flynn's arguments.

¶ 24. This court has long held that it is the province of the legislature, not the courts, to determine public policy.

> We hardly see how. . .it can be said that the legislature, which is the voice of the people, has no freedom of action in determining the best methods of giving to the public that service for which it is willing and able to pay. It is the best judge of what is necessary to meet the needs of the public and in what manner the service shall be directed.

*State ex rel. Thomson v. Giessel*, 265 Wis. 185, 193, 60 N.W.2d 873 (1953) (quoting *People ex rel. Soble v. Gill*, 193 N.E.192 (1934)). This court reviews the validity of legislation in light of the constitution, not in light of its own wisdom. *See Wisconsin Solid Waste Recycling Auth. v. Earl*, 70 Wis. 2d 464, 478, 235 N.W.2d 648 (1975). "If the supreme court and the legislature differ on the appropriate public policy, the legislative view prevails. 'When acting within constitutional limitations, the Legislature settles and declares the public policy of a state, and not the court.' " *Hengel v. Hengel*, 122 Wis. 2d 737, 742, 365 N.W.2d 16 (Ct. App. 1984) (citing *Borgnis v. Falk Co.*, 147 Wis. 327, 351, 133 N.W. 209 (1911)).

¶ 25. Specifically regarding appropriations, Wis. Const. art. VIII, §§ 2 and 5 empower the legislature, not the judiciary, to make policy decisions regarding taxing and spending. Wisconsin Const. art. VIII, § 2 provides that "[n]o money shall be paid out of the treasury except in pursuance of an appropriation by law." This section gives the legislature its spending powers. The legislature derives its taxing power from Wis. Const. art. VIII, § 5:

> The legislature shall provide for an annual tax sufficient to defray the estimated expenses of the state for each year; and whenever the expenses of any year shall exceed the income, the legislature shall provide for levying a tax for the ensuing year, sufficient, with other sources of income, to pay the deficiency as well as the estimated expenses of such ensuing year.

It is well-established that these constitutional sections should be read together. *See Chicago & N. W. R. Co. v. The State*, 128 Wis. 553, 634, 108 N.W. 557 (1906). The court may not "set up a judicial standard as to the best method of determining the amount of money to be raised by taxation. . . .[T]he constitution leaves the way open for the legislature to exercise the widest discretion in the matter." *Id.*

¶ 26. Courts may, however, invoke "common sense and common conscience" (*see Merten v. Nathan*, 108 Wis. 2d 205, 213, 321 N.W.2d 173 (1982)) to determine if private dealings violate public policy. In fact, in each case cited by Flynn to support his public policy argument, the court relied on public policy to review and invalidate a private action, not a statute. And even in those cases, the court relied on public policy, not as

the court gleaned it, but as expressed in the Constitution and in statutes. For example, in reviewing an employment-at-will relationship, this court held that "an employee has a cause of action for wrongful discharge when the discharge is contrary to fundamental and well-defined public policy *as evidenced by existing law*." *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 573, 335 N.W.2d 834 (1983) (emphasis added).

¶ 27. Similarly, in reviewing whether an exculpatory contract barred a plaintiff's personal injury claim, this court defined public policy as " 'that principle *of law* under which freedom of contract or private dealings is restricted *by law* for the good of the community.' " *Merten*, 108 Wis. 2d at 213 (emphasis added) (quoting *Higgins v. McFarland*, 86 S.E.2d 168, 172 (1955)). The court based its decision on public policy as expressed in laws. A statute reflects the legislature's determination of public policy which itself embodies the community common sense and common conscience. *See Merten*, 108 Wis. 2d at 213. Flynn did not cite to one case in which the court invalidated legislation on its independent glean of public policy, and we decline to do so here.

¶ 28. Flynn also argues that by definition, an appropriation is money no longer available for the legislature to reallocate. Once money is appropriated, the funds are no longer within reach unless the legislature repeals the program.

¶ 29. Flynn incorrectly interprets this court's definition of "appropriation" found in *Finnegan*. In that case, relying on Webster's New International Dictionary and other jurisdictions for a definition of appropriation, the court stated:

541

> An appropriation is 'the setting aside from the public revenue of a certain sum of money for a specified object, in such manner that the executive officers of the government are authorized to use that money, and no more, for that object, and no other.'

*Finnegan*, 220 Wis. at 148 (citation omitted). Flynn also relies on cases from other jurisdictions for his assertion that once funds are appropriated, they cannot be used for a different purpose unless the initial enacting statute is repealed. For example, the court prohibited an agency's unilateral transfer of funds where an executive agency attempted to use funds for a purpose other than that for which the legislature appropriated the funds. *See McDougall v. Frohmiller*, 150 P.2d 89, 90–91 (Ariz. 1944). It is "axiomatic that no money can be paid from the state treasury unless and except the legislature or the constitution itself has made an appropriation therefor, and it can only be used then for the purposes specified by the appropriation." *Id.* at 92.

¶ 30. Flynn misplaces his reliance on *Finnegan* and *McDougall*. The definition of "appropriation" in *Finnegan* and the holding of *McDougall* do not constrain the legislative, but rather the executive branch. The definition also does not constrain the legislature's public policy decisions regarding where money will be appropriated, but rather how funds can be used once appropriated. This definition is consistent with Wis. Const. art. VIII, § 2 which requires appropriations to be made "by law." Additionally, the executive branch is prohibited from unilaterally reallocating an appropriation. *See Finnegan*, 220 Wis. at 148. The legislature, as the government body closest to the will of the people, may change an appropriation if, in their estimation,

public policy so dictates. It is the legislature's role to determine whether to reallocate limited resources.

¶ 31. Respondent also requests that we hold that the 1991–93 legislative session controls court automation funding even into subsequent legislative sessions. We decline such invitation. Each legislative session may reassess the needs of the public, and the allocation of scarce public resources. It is the province of the legislature to do so. One legislature may not bind a future legislature's flexibility to address changing needs. Thus, one legislature may not enact a statute which has "implications of control over the final deliberations or actions of future legislatures." *Wisconsin Solid Waste*, 70 Wis. 2d at 487; *see also, State ex rel. Warren v. Nausbaum*, 59 Wis. 2d 391, 450–51, 208 N.W.2d 780 (1973). Although the court automation program was appropriated as a continuing appropriation by the 1991–93 legislature (and even by the 1993–95 legislature), this does not restrict the 1993–95 legislative session from reallocating unexpended, unencumbered public funds.

¶ 32. Flynn further argues that 1993 Wis. Act 16, § 9253 is invalid on public policy grounds because the legislature misled the public and courts into believing that the funds would be available until expended. By lapsing the funds, the courts and the public were not given adequate notice that these funds would no longer be available for court automation. However, in both his brief and at oral argument, counsel for Flynn concedes that the legislature could have achieved the same result (transferring funds from the continuing appropriation for court automation to the general purpose revenue fund) if it had repealed the continuing appropriation and recreated it with a smaller balance.

¶ 33. Flynn's argument elevates form over substance. This court will not invalidate a statute simply because the legislature failed to comply with its own procedural budget statutes.

> Although since *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) courts have had the authority to review acts of the legislature for any conflict with the constitution, courts generally consider that the legislature's adherence to the rules or statutes prescribing procedure is a matter entirely within legislative control and discretion, not subject to judicial review unless the legislative procedure is mandated by the constitution.

*State ex re. LaFollette v. Stitt*, 114 Wis. 2d 358, 365, 338 N.W.2d 684 (1983). If, however, the legislature did comply with the letter of its procedural budget statutes, Flynn's concern that the public did not receive notice of the lapse would still not be addressed. If the legislature had repealed the continuing appropriation and recreated the court automation fund, which Flynn agrees would be valid, the legislature probably would have taken such action within the budget bill. The public and courts would have received no more notice of such repeal than they did of the lapse.

¶ 34. Flynn and *amicus curiae*, Legal Action of Wisconsin (LAW), argue that 1993 Wis. Act 16, § 9253 is retroactive legislation because it lapsed funds already appropriated for court automation and transferred the funds to the general purpose revenue fund. By lapsing the funds within a provision of the budget bill, the legislature did not provide adequate notice to interested parties.

¶ 35. Although 1993 Wis. Act 16, § 9253 lapsed unencumbered and unexpended funds already in the coffers of the court automation program, as discussed above, the legislature has the constitutional authority to allocate and reallocate scarce resources.

¶ 36. In sum, Flynn did not prove beyond a reasonable doubt that 1993 Wis. Act 16, § 9253 is invalid based on public policy grounded on the constitution, statutes, common law or public expectations. It is the province of the legislature to determine public policy. This court will not impose its independent view of public policy on duly enacted legislation absent a constitutional violation.

## III.

¶ 37. Flynn next argues that 1993 Wis. Act 16, § 9253 violates the separation of powers doctrine. The circuit court, having decided that § 9253 violated public policy, determined that it was not necessary to address the separation of powers issue.

¶ 38. Flynn argues that the subject matter of the statute does not fall within an area of shared powers, but rather it is within the judiciary's core zone of exclusive authority. This court recently provided the analytical framework for evaluating a separation of powers challenge. *See State ex rel. Friedrich v. Dane County Cir. Ct.*, 192 Wis. 2d 1, 531 N.W.2d 32 (1995). The doctrine of separation of powers is implicitly found in the tripartite division of government between the judicial, legislative and executive branches. *See id.* at 13 (citing *State v. Holmes*, 106 Wis. 2d 31, 42, 315 N.W.2d 703 (1982)). Each branch has exclusive core constitutional powers, into which the other branches may not intrude. *See id.* (citing *State ex rel. Fiedler v.*

*Wisconsin Senate*, 155 Wis. 2d 94, 100, 454 N.W.2d 770 (1990)). Beyond these core constitutional powers lie " '[g]reat borderlands of power' " which are not exclusively judicial, legislative or executive. *See id.* at 14. While each branch jealously guards its exclusive powers, our system of government envisions the branches sharing the powers found in these great borderlands. *See id.* Ours is a system of " 'separateness but interdependence, autonomy but reciprocity.' " *Id.* (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952)). When the powers of the branches overlap, one branch is prohibited from unduly burdening or substantially interfering with the other. *See Friedrich*, 192 Wis. 2d at 14.

[11]

¶ 39. To determine whether a statute unconstitutionally infringes on the judicial power, this court must first determine whether the subject matter of the statute falls within powers constitutionally granted to the legislature. *See id.* This court must also determine whether the subject matter of the statute falls within the judiciary's constitutional powers. *See id.* at 14–15. If the subject matter of the statute is within the judiciary's constitutional powers but neither the legislature's nor executive's, it is within the judiciary's core zone of exclusive power and any exercise of authority by another branch of government is unconstitutional. *See In Matter of Complaint Against Grady*, 118 Wis. 2d 762, 776, 348 N.W.2d 559 (1984) (citing *Thoe v. Chicago M. & St. P. R. Co.*, 181 Wis. 456, 465 (1923)). The court may, however, abide by the statute if it furthers the administration of justice, as a matter of comity and courtesy rather than acknowledgment of power. *See Friedrich*, 192 Wis. 2d at 15.

¶ 40. If the subject matter of the statute is within the constitutional powers of both the judicial and legislative branches, it is within shared powers and the statute is constitutional only if it does not unduly burden or substantially interfere with the judiciary. *See id.* "The focus of this evaluation is on whether one branch's exercise of power has impermissibly intruded on the constitutional power of the other branch." *Id.*

¶ 41. Turning to the first inquiry, we conclude the subject matter of 1993 Wis. Act 16, § 9253 does fall within the powers constitutionally granted to the legislature. "The legislature has power to enact legislation for the general welfare and to allocate government resources." *Id.* at 16. There is no dispute that the subject matter of § 9253 is an appropriation, allocating government resources. Several sections of the Wisconsin Constitution together provide that the legislature has the power to enact laws which appropriate funds. "No money shall be paid out of the treasury except in pursuance of an appropriation by law." Wis. Const. art. VIII, § 2. Either the senate or assembly, both being vested with the legislative power (*see* Wis. Const. art. IV, § 1), may originate a bill and amend a bill passed by the other house. *See* Wis. Const. art IV, § 19. Further, "[n]o law shall be enacted except by bill." Wis. Const. art. IV, § 17(2). 1993 Wisconsin Act 16 § 9253, which lapsed funds from a continuing appropriation for court automation to the general purpose revenue fund, is clearly an appropriation bill and within the legislature's constitutional authority.

¶ 42. The second inquiry is whether the subject matter of the statute falls within the judiciary's pow-

ers. We conclude it does. The judicial branch derives its powers from the constitution, both explicitly and implicitly. The constitution explicitly provides that the judicial authority of this state is vested in a unified court system. *See* Wis. Const. art. VII, § 2. Also, the Wisconsin Supreme Court has "superintending and administrative authority over all courts." Wis. Const. art. VII, § 3(1). In addition to the explicit powers, the judiciary has inherent powers, implied in the constitution. The judiciary's inherent powers are those necessary for the judiciary to "accomplish its constitutionally or legislatively mandated functions." *Friedrich*, 192 Wis. 2d at 16 (quoting *Holmes*, 106 Wis. 2d at 44). "Such powers have been conceded because without them [the judiciary] could neither maintain [its] dignity, transact [its] business, nor accomplish the purposes of [its] existence." *Friedrich*, 192 Wis. 2d at 16–17, n.7 (citing *State v. Cannon*, 196 Wis. 534, 536, 221 N.W. 603 (1928)). The judiciary derives the "purpose of its existence" from the constitution. The judiciary exercises its inherent powers as necessary to preserve its constitutional duty to oversee the administration of justice. *See Friedrich*, 192 Wis. 2d at 19.

¶ 43. Regarding the explicit constitutional powers, the judiciary's "superintending power is as broad and as flexible as necessary to insure the due administration of justice in the courts of this state." *In re Hon. Charles E. Kading*, 70 Wis. 2d 508, 520, 235 N.W.2d 409 (1975). This constitutional power, however, is over the courts, not the executive or legislative branches.

¶ 44. Superintending powers "contemplate[ ] ongoing, continuing supervision [of the lower courts] in response to changing needs and circumstances." *Kad-*

*ing*, 70 Wis. 2d at 520. The judiciary is not vested with constitutional superintending authority over the legislative budget process or determinations. Rather, this court's constitutional superintending authority over all courts enables and requires this court to review the judicial acts and jurisdictional errors of lower courts. *See State ex rel. Reynolds v. County Court*, 11 Wis. 2d 560, 565, 105 N.W.2d 876 (1960). Superintending authority allows this court to use writs, such as the writ of mandamus, to " 'control the course of litigation in inferior courts when such a court either refuses to act within its jurisdiction, or acts beyond its jurisdiction, to the serious prejudice of the citizen.' " *Id.* (quoting *State ex rel. Tewalt v. Pollard*, 112 Wis. 232, 234, 87 N.W. 1107 (1901)).

¶ 45. The judiciary's explicit constitutional administrative power is a power over all the courts to ensure efficient and effective functioning of the court system. *See Grady*, 118 Wis. 2d at 783. Included in the judiciary's constitutional administrative authority is "the power to formulate and carry into effect the budget for the court system. . . ." *State ex rel. Moran v. Dept. of Administration*, 103 Wis. 2d 311, 317, 307 N.W.2d 658 (1981). As part of ensuring efficient and effective functioning of the court system, this court "exercise[s] administrative control over the funds for the use of the court system." *Id.* at 318. Again, Wis. Const. art. VII, § 3 gives this court authority to formulate and carry into effect its budget - funds appropriated by the legislature for the court's use.

¶ 46. From these explicit grants of authority, articulated in the constitution, flow certain inherent powers implicit in the constitutional mandates. By

means of inherent powers, the supreme court has authority to ensure the courts function efficiently and effectively to provide for the due administration of justice. *See Holmes*, 106 Wis. 2d at 44; *see also Jacobson v. Avestruz*, 81 Wis. 2d 240, 247, 260 N.W.2d 267 (1977) (holding that the court has inherent power to assess the costs of impaneling a jury upon parties withdrawing a demand for a jury trial).

¶ 47. The court has exercised its inherent authority to regulate members of the bench and bar. The court has exclusive inherent power to regulate the practice of law once it has been determined that an attorney meets the legislative and judicial threshold requirements for membership. *See Fiedler*, 155 Wis. 2d at 101. This court has inherent power to adopt statewide measures, such as the Code of Judicial Ethics requiring disclosure of judges' assets, which are "absolutely essential to the due administration of justice in the state." *Kading*, 70 Wis. 2d at 518. The court has "inherent power and responsibility to determine whether the attorney's fees in question are reasonable and to refuse enforcement of those charges which are not. . . ." *Herro, McAndrews & Porter v. Gerhardt*, 62 Wis. 2d 179, 183, 214 N.W.2d 401 (1974). Exercise of inherent powers in these situations was necessary to preserve the judiciary's constitutional duty to oversee the administration of justice.

¶ 48. This court also has inherent power to protect the courts and the judicial system against any action that would unreasonably curtail the powers or materially impair the efficacy of the courts or judicial system. *See Holmes*, 106 Wis. 2d at 44. This court determined that circuit courts have exclusive inherent authority to remove their judicial assistants. *See Bar-*

550

*land v. Eau Claire County*, 216 Wis. 2d 559, 587–88, 575 N.W.2d 691 (1998). The court also has inherent power to determine that the physical facilities proposed by the county for the court to conduct its judicial functions were inadequate. *See In re Court Room*, 148 Wis. 109, 134 N.W. 490 (1912). The proposed facilities did not have room for a jury room which would have resulted in suspending all court proceedings while each jury deliberated. *See id.* at 119–120. The court exercised its inherent powers in this case to preserve its constitutional duty to oversee the administration of justice.

¶ 49. Although inherent power is essential to a strong and independent judiciary, *see id.*, "the power must not extend the jurisdiction of the court nor abridge or negate those constitutional rights reserved to individuals." *Jacobson*, 81 Wis. 2d at 247. The court does not, for example, have inherent authority to dismiss a criminal case with prejudice prior to the attachment of jeopardy unless the defendant's constitutional right to a speedy trial is implicated. *See State v. Braunsdorf*, 98 Wis. 2d 569, 570, 297 N.W.2d 808 (1980). This court also does not have inherent power to expunge juvenile police records which are under the authority of the police chief. *See Breier v. E.C.*, 130 Wis. 2d 376, 387, 387 N.W.2d 72 (1986). In neither situation was the court's exercise of power "essential to the existence or the orderly functioning of a circuit court, nor is it necessary to maintain the circuit court's dignity, transact its business or accomplish the purpose of its existence." *Id.* Exercise of inherent powers was not necessary in these cases to preserve the judiciary's constitutional duty to oversee the administration of justice.

¶ 50. This review of cases regarding the court's constitutional powers, including its inherent powers, over the administration and functioning of the courts, and the legislature's authority over appropriations illustrates that both branches exercise power over determining funding for the functioning of the judiciary. As discussed above, the judiciary has constitutional administrative authority to formulate and carry into effect its budget. It also has inherent authority necessary to preserve its constitutional duty to oversee the administration of justice. The legislature, however, has clear constitutional authority to appropriate scarce resources. Thus, we conclude the subject matter of 1993 Wis. Act 16, § 9253 falls within a shared power.

¶ 51. Having determined that 1993 Wis. Act 16, § 9253 is within shared powers, the subject matter of the statute cannot be within the judiciary's core zone of exclusive authority. Flynn's argument that the subject matter of this statute is within the judiciary's exclusive authority fails.

¶ 52. Flynn argues, in the alternative, that if the subject matter of 1993 Wis. Act 16, § 9253 is within shared powers, it is nonetheless unconstitutional because the statute unduly burdens or substantially interferes with the judiciary. In this area of shared powers, the legislature may lapse the court automation funds to the general purpose revenue fund only if such lapse does not unduly burden or substantially interfere with the judiciary. Flynn has the burden to prove beyond a reasonable doubt that the statute unduly burdens or substantially interferes with the judiciary. "Imposing [this] highest standard of proof is particularly necessary in cases such as these to ensure that

the judiciary will order the expenditure of public funds for its own needs only when it articulates a compelling need." *Friedrich*, 192 Wis. 2d at 24. In areas of shared powers, "there should be such generous co-operation as will tend to keep the law responsive to the needs of society." *Rules of Court Case*, 204 Wis. 501, 514, 236 N.W. 717 (1931).

¶ 53. Flynn has failed to show beyond a reasonable doubt that 1993 Wis. Act 16, § 9253 unduly burdens or substantially interferes with the judiciary. He relies upon certain evidence in the record and on affidavits submitted by Mr. Timothy Hicks, the Judicial Information Systems Manager for Milwaukee County, and former Chief Justice Nathan Heffernan. However, these do not show beyond a reasonable doubt that the lapse of funds unduly burdens or substantially interferes with the judiciary.

¶ 54. Flynn points to the record as proof that the lapse of nearly $2.9 million had an immediate adverse impact on the court automation program. The court was not able to fully implement the system or update the systems currently in place. Electrical problems in many court houses could not be addressed and implementing a bar coding pilot program was delayed. However, an "adverse impact" is not, by itself, proof of an undue burden or substantial interference much less proof beyond a reasonable doubt.

¶ 55. He also offers affidavits from Mr. Timothy Hicks, the Judicial Information Systems Manager for Milwaukee County, and former Chief Justice Nathan Heffernan. Mr. Hicks stated that the problems he is having with the implementation of court automation in Milwaukee County are a direct result of the 1993 lapsing of funds to the general revenue fund. He was not able to get a Data Server (the "heart" of the CCAP

system) online in a timely fashion, hire sufficient personnel, or adequately update computer equipment. Chief Justice Heffernan stated that the lapse prevented the judicial branch from setting aside funds for equipment purchases to ensure compatibility, prevented the judicial branch from administering CCAP in the manner it saw as most efficient, and caused four counties to drop out of the CCAP system for fear that funds would again be lapsed in the future.

¶ 56. Again, there is no question that 1993 Wis. Act 16, § 9253 had, as both Chief Justice Heffernan and Mr. Hicks assert, an adverse impact in particular courts and the court system in general. We did then, and do now, consider § 9253 to some degree penny-wise and pound foolish, as well as a poor management choice. But that is a far cry from saying beyond a reasonable doubt that § 9253 unduly burdened or substantially interfered with the court system. A burden? Yes. An interference? Yes. But undue or substantial? Not beyond a reasonable doubt. The legislature continued to fund the court automation program. Our needs continued to be met, though at a slower pace, and certainly not as sufficiently, economically, efficiently or conveniently as we would have liked.

¶ 57. We may, as a court, disagree with the legislature. But unless we can say beyond a reasonable doubt that the statute unduly burdens or substantially interferes with our ability to function, we must uphold 1993 Wis. Act 16, § 9253. In *Friedrich* we held that only when the action of the legislature unduly burdens or substantially interferes with the judiciary, i.e., when qualified and effective counsel are not available at the rate set by the legislature, will we assert our constitu-

tional power to ensure the effective administration of justice. *See Friedrich*, 192 Wis. 2d at 29–30. In this case, we similarly hold that if the legislature's appropriation to the court system unduly burdens or substantially interferes with the judiciary, the court may declare such act unconstitutional, thus ensuring that the judiciary can preserve its constitutional duty to oversee the administration of justice. The lapse of funds from the court automation program to the general purpose revenue fund is not, however, such a situation. The lapse of funding may have delayed full implementation of court automation, but such delay did not cause an undue burden or substantially interfere with the judiciary. Based on the evidence in this record, we cannot say beyond a reasonable doubt that this legislation unduly burdens or substantially interferes with the judiciary. Accordingly, Flynn has failed to carry his burden on this issue.

¶ 58. Flynn also raises for the first time on appeal and in a footnote, the argument that 1993 Wis. Act 16, § 9253 may violate Wis. Const. art. VIII, § 1 which requires taxation to be uniformly applied. This court generally refuses to consider issues raised for the first time on appeal, especially a claim that a statute is unconstitutional. *See Blenski v. State*, 73 Wis. 2d 685, 702, 245 N.W.2d 906 (1976). Although the court retains the discretion to consider arguments raised for the first time on appeal, we decline to do so here. *See State v. Wilks*, 121 Wis. 2d 93, 107, 358 N.W.2d 273 (1984).

¶ 59. Finally, because we determine that the legislature, not the judiciary, determines public policy and that 1993 Wis. Act 16, § 9253 does not violate the separation of powers doctrine, we need not address whether

555

the remedies allowed by the circuit court were appropriate.

¶ 60. In sum, we conclude that it is the province of the legislature, not the courts, to determine public policy. Because one legislature may not bind future legislatures, it is fully within the legislature's power to change an appropriation put into place by a previous legislative session. It is assumed such action reflects public will, and if not, those legislators will be answerable at the ballot box. We also conclude that appropriating funds for the judiciary is one of shared powers. The legislature clearly has the appropriation power and the judiciary has explicit constitutional administrative powers and inherent powers to ensure that the judicial system functions efficiently. However, Flynn failed to show beyond a reasonable doubt, that the lapse of $2,898,000 from the court automation program revenue fund to the general purpose revenue fund unduly burdened or substantially interfered with the judiciary. Therefore, we hold that the lapse in 1993 Wis. Act 16, § 9253 is constitutional.

*By the Court.*—The order and judgment of the circuit court is reversed.

¶ 61. ANN WALSH BRADLEY, J. (*concurring*). I write separately because the majority's smuggled legislation analysis of an item of general legislation gives legitimacy to a meritless argument and in the process confuses our law.

¶ 62. The majority goes to great lengths to respond to what it views as an alternative argument by Flynn. The majority surmises that Flynn argues that while 1993 Wis. Act 16, § 9253, is not a private or local

bill, pursuant to Wis. Const. art. IV, § 18, the court should engage in a parallel "smuggled legislation" analysis to determine if the legislation deserves a presumption of constitutionality.

¶ 63. In doing so, the majority first analyzes the preservation of public notice purpose of Wis. Const. art. IV, § 18. The majority then parses our previous anti-smuggling case law to determine the number of sponsors, supporters, and amount of public hearing time necessary to defeat an assertion of smuggled legislation for private or local law purposes. Finally, the majority applies its interpretation of our art. IV, § 18 smuggling framework to the case at hand and determines that the legislation was not smuggled through the legislature. The majority finds dispositive the fact that § 9253 was not single subject legislation and that considerable attention was given to the bill by the Joint Finance Committee which considered four alternative proposals relating to the lapsed funds. In the majority's view, the legislature "intelligently participated" in considering the bill.

¶ 64. The majority's extensive engagement of this elusive and unsupported argument confuses the law and threatens to open new avenues of attack on legislation. Prior to *Flynn*, this court accorded legislation that was not a private, local, or special bill a presumption of constitutionality that had to be overcome by the challenging party. *See State v. Holmes*, 106 Wis. 2d 31, 41, 315 N.W.2d 703 (1982); *ABC Auto Sales v. Marcus*, 255 Wis. 325, 330, 38 N.W.2d 708 (1949). However, the majority's failure to reject out-of-hand the perceived smuggling analysis in this case opens all legislation to threshold allegations that the legislation was smuggled through the legislature and an accompa-

nying legal skirmish between the parties over the proper presumption of constitutionality to be applied.

¶ 65. A review of our precedent demonstrates that the smuggling of legislation argument has never been, is not, and never should be an independent basis to attack the general presumption of constitutionality of legislation. The smuggling analysis has been confined to attacks on legislation based on the terms of art. IV, § 18.

¶ 66. In *Milwaukee County v. Isenring*, 109 Wis. 9, 23, 85 N.W. 131 (1901), we noted that "[t]he framers of the constitution, in adopting sec. 18, art. IV, intended to guard against the danger of legislation, affecting private or local interests, being smuggled through the legislature. . . ." In subsequent cases wherein a party has alleged a § 18 violation, we have conducted a smuggled legislation analysis. *See, e.g., Davis v. Grover*, 166 Wis. 2d 501, 480 N.W.2d 460 (1992) (finding no evidence that program was smuggled through the legislature in violation of § 18); *Milwaukee Brewers v. Department of Health & Social Services*, 130 Wis. 2d 79, 107–08, 387 N.W.2d 254 (1986) (holding legislation not smuggled in violation of § 18); *City of Oak Creek v. DNR*, 185 Wis. 2d 424, 518 N.W.2d 276 (Ct. App. 1994) (holding statute not entitled to presumption of constitutionality as a private or local bill under § 18). However, we have never before conducted such an inquiry in the absence of a § 18 constitutional objection. This fact and the majority's failure to provide an alternative substantive basis requiring such a test for legislation indicates that absent a § 18 allegation, a smuggling claim should not lie.

¶ 67. By opening the door to plaintiffs eager to attack legislation with the complexities of the smug-

gling analysis, the majority forces courts to forego the previous presumption of constitutionality and determine the circumstances in which a piece of legislation will not pass the smuggling test. How many sponsors must a bill have? How many citizens must attend a public hearing on a bill? How many minutes of consideration in committee or before the Assembly and Senate must a bill receive? How much attention must be drawn to each specific provision of a bill?

¶ 68. These are questions that courts will be forced to consider because of the majority's damaging legitimatization of an argument that the majority is not even sure that Flynn raises before this court. Therefore, while I agree with the majority's holding that the legislature did not violate the separation of powers doctrine by lapsing the CCAP funds, I do not subscribe to the smuggling analysis in which the majority engages.

¶ 69. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this opinion.